## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CARLOS E. MARTINEZ,

       Plaintiff,

vs.                                      No. 13cv1049 RB/RHS

GREAT SOUTHWEST COUNCIL-
BOY SCOUTS OF AMERICA, THE
BOY SCOUTS OF AMERICA, and
CHRIS SHELBY, in his individual
capacity.

       **Defendants.**

## AMENDED COMPLAINT FOR DAMAGES FROM GENDER DISCRIMINATION, NATIONAL ORIGIN DISCRIMINATION, AND BREACHES OF AN IMPLIED CONTRACT OF EMPLOYMENT

**COMES NOW** Plaintiff Carlos E. Martinez [hereinafter "Martinez"], by and through his

counsel of record, Law Offices of Michael E. Mozes, P.C., and hereby submits his Amended

Complaint for Damages from Gender Discrimination, National Origin Discrimination, and

Breaches of an Implied Contract of Employment.  As grounds therefor, Martinez states as

follows:

### I.  JURISDICTION

1.      This case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e, *et seq.*, and New Mexico common law.

2.      Martinez is, and at all times material hereto has been, a resident of the County of

Sandoval, State of New Mexico.

3.      Defendant Great Southwest Council-Boy Scouts of America [hereinafter "GSC-

BSA"] is, based upon information and belief, a duly licensed nonprofit business organized under

the laws of the State of New Mexico, located and doing business in the County of Bernalillo, State of New Mexico.

4.      Defendant The Boy Scouts of America [hereinafter "BSA"]is, based upon information and belief, a duly licensed nonprofit business with significant contacts in the State of New Mexico through the GSC-BSA and other organizations located and doing business in the State of New Mexico.

5.      On December 17, 2012 Martinez filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging, among other things that he had been discriminated against in violation of Title VII and the Civil Rights Act of 1964, as amended based on sex and national origin.

6.      On August 1, 2013, the EEOC issued Martinez a Notice of Right to Sue (NRTS). This Complaint for Damages is filed within 90 days of the receipt of the NRTS.

7.      Defendants GSC-BSA and BSA meet the eligibility requirements set forth in Title VII for the filing of this action with respect to the number of employees needed to qualify for protection under Title VII.

8.      This Court has subject matter jurisdiction over the claims set forth herein and subject matter jurisdiction over the parties.

9.      Venue is proper in this Court.

10.     This Court may exercise jurisdiction over this matter pursuant to 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. § 1343, civil rights jurisdiction.

## II.  FACTUAL ALLEGATIONS

11.     Martinez hereby adopts and incorporates by reference paragraphs 1 through 10  as

2

set forth above.

12.     GSC-BSA hired Martinez in the summer of 2009 as a Program Director of the

Scoutreach Juvenile Diversion Program (SJDP).

13.     Throughout the entire period of Martinez's employment with  GSC-BSA,

Martinez performed his job duties in at least a satisfactory manner.  Martinez's performance

evaluations confirm that he performed his job duties at least as expected.

14.     However, Martinez faced ongoing workplace challenges centered on dealing with

the incompetent, inconsistent, and inadequate leadership of his supervisors–particularly

Christopher Shelby and Lloyd Lyman.  During the relevant period of time Shelby was Scout

Executive or of the GSC-BSA and Lyman was the Director of Field Services.  Lyman was

Martinez's direct supervisor and Shelby the second-line supervisor.

15.     In December 2011, matters came to a head over an innocuous set of

circumstances.  On that date Martinez had given a new employee, Violeta Unzueta, instructions

and directions with respect to job duties to perform while Martinez had lunch with his two young

sons.  The duties given to Unzueta were uncomplicated and needed no further supervision.

16.     While at lunch Martinez received a telephone call from Lyman.  Lyman was

hostile, upset, and beside himself because Martinez had "left" Unzueta performing duties in the

GSC-BSA offices.  Lyman's concerns were wholly unfounded and Martinez explained that he

had left directions for Unzueta with respect to what work to perform.  Lyman stated he wanted

Martinez to return to the office.  Martinez's cell phone battery went dead at that point.  Shortly

thereafter Shelby telephoned and angrily demanded that Martinez return immediately to the

office.  Lyman called again and repeated, in the same tone, that Martinez needed to return to the

3

office.

17.     Shelby and Lyman's actions were out-of-sync with the normal and routine practice of GSC-BSA supervisors taking lunches while employees were in the office performing specific duties as instructed by the supervisors.

18.     At the time of this occurrence, Shelby had the habit and routine while in the workplace of referring to Hispanics through ethnic epithets, slurs, and derogatory jokes.

19.     Martinez is a Hispanic male.

20.     Martinez cut short his lunch with his small children, returned to the GSC-BSA offices, and met with Shelby and Lyman.  What followed was a 40-minute harangue in which Martinez was insulted, intimidated, and repeatedly threatened with termination.  Shelby and Lyman demeaned and humiliated Martinez, gave Martinez no opportunity to speak, and spoke to Martinez in a hostile, threatening, and inappropriate manner.  Martinez was confused and dismayed by these circumstances because neither Shelby nor Lyman had any basis–reasonable or otherwise–to submit Martinez to this conduct.  Martinez composed a Hostile Work Environment Report due to the hostile work environment he was subjected to.

21.     Circumstances did not improve following the December 2011 meeting.  Shelby and Lyman continued to subject Martinez to a hostile work environment.  Indeed, on May 10, 2012, Martinez elevated a written complaint to BSA leadership complaining of continued workplace hostility and inappropriate behavior on the part of GSC-BSA leadership.  Although these complaints were founded in clear and convincing evidence, GSC-BSA did nothing to investigate these complaints or remedy the hostile work environment.

22.     Once Shelby and Lyman became advised of Martinez's May 2012 written

4

complaint, both men determined to find a way to end Martinez's employment with the GSC-BSA.

23.     On or about July 10, 2012, the GSC-BSA received a letter from an attorney representing Hope Kitts, a former GSC-BSA employee.  The letter alleged that Martinez had sexually harassed Kitts and that Kitts intended to sue the GSC-BSA.  The allegations of sexual harassment against Martinez were the result of a conspiratorial agreement between three current and/or former female employees who had worked under Martinez's supervision.  The effect of the letter was to cause GSC-BSA to fear a lawsuit from Kitts.

24.     The instigator of this conspiracy was Kitts.  Kitts actively and passionately sought out a consensual sexual relationship with Martinez during a period in May-June 2012.  The pair consensually dated for a short period.   Martinez eventually decided that a dating relationship with a workplace subordinate was not a good idea and Martinez then decided to end the relationship.  Martinez's decision angered and humiliated Kitts.

25.      During the period Martinez and Kitts dated, Kitts twice went to Martinez's house after work hours.  On the first occasion Martinez and Kitts simply kissed and listened to music.  During the second visit by Kitts to Martinez's home, the pair removed each other's shirts.  Kitts also removed her bra.  The pair engaged in kissing and petting for a period of time.  Kitts told Martinez she wanted to have sex with him.  Martinez told Kitts that they "should go slow" and did not feel comfortable.  In addition, Martinez and Kitts engaged in sex at Kitts' home.  This sexual encounter was initiated by Kitts and at no point did Kitts express any disagreement or disapproval with what occurred.

26.     Kitts became very upset and threatened to resign her employment with GSC-BSA.

5

Nevertheless, Kitts continued to communicate to Martinez her desire to continue the consensual relationship.

27.     Following this incident, Kitts spoke with Liza Bley (GSC-BSA employee) and Juliana Cabral (former GSA-BSC employee) regarding Kitts' interactions with Martinez.  Cabral and Bley invented allegations of harassment against Martinez.  The three women met several times, composed statements, got their stories "straight," and decided to elevate their allegations of sexual harassment to GSC-BSA management.

28.     On July 12, 2012, due to communications between these women and GSC-BSA management, the GSC-BSA suspended Martinez from work pending investigation.  Throughout the period of time between notification to the GSA-BSA of the allegations accusing Martinez of misconduct and the suspension, the GSA-BSA maintained fluid and frequent communications with the national BSA.  The suspension and subsequent termination actions the GSC-BSA took relied upon the counsel and instruction of the national BSA.  It is the testimony and assertion of GSC-BSA employees and the President of the GSC-BSA Board that Martinez was eventually terminated under the direct instruction of the BSA.

29.     The GSC-BSA and BSA then conducted a biased, unprofessional, shoddy, and tainted investigation into the allegations brought forward by these three women.  None of these women had ever complained to anyone at the GSC-BSA about any inappropriate relationship or sexual harassment involving Martinez until Martinez broke off the relationship with Kitts.  This is true although the majority of the allegations brought forward dated from 2011.

30.     The investigation revealed no proven details of Martinez engaging in any forms of harassment against these female employees–let alone workplace sexual harassment.  The

6

allegations turned out to be simply that–allegations lacking any proof, corroboration, or substantiation.  Other non-Hispanic employees in such circumstances were neither disciplined nor terminated in the fashion Martinez was.

31.     Despite this lack of proof, the GSC-BSA and BSA decided to terminate Martinez's employment on July 27, 2012.

32.     The GSC-BSA have an Employee Handbook which contains the personnel policies and procedures of the GSC-BSA.  All employees are required to abide by these policies and procedures.  At all times relevant hereto, Martinez had a reasonable expectation that the GSC-BSA would abide by and enforce its own policies and procedures.

33.     The GSC-BSA did not abide by these personnel policies and procedures in creating a hostile work environment for Martinez, discriminating against him because of his race/ethnicity, and deciding to terminate Martinez.

## COUNT I

## VIOLATIONS OF TITLE VII

## REVERSE GENDER DISCRIMINATION

34.     Martinez hereby adopts and incorporates by reference paragraphs 1 through 33 as set forth above.

35.     Martinez is a male.

36.     Under the threat of litigation from Kitts' attorney and in the face of the lack of any corroboration of the females' claims of sexual harassment, GSC-BSA and the BSA decided that rather than face the prospects of defending three lawsuits from females alleging sexual harassment it would be more feasible to simply terminate Martinez because he was a male.

GSC-BSA believed its unlawful actions against Martinez more defensible.

37.     GSC-BSA and the BSA wrongfully decided to terminate Martinez following the investigation into the unsubstantiated allegations.  None of the allegations made by any of the females was corroborated.  In other words, at the time of the termination decision, GSC-BSA *and the BSA* had nothing more than unsupported claims GSC-BSA and the BSA knew had been developed through a number of questionable meetings, conversations, and discussions between the three women.  In addition, GSC-BSA and the BSA knew as a result of its flawed investigation that the events and circumstances of the sexual harassment claims of Kitts involved a consensual relationship between Martinez and Kitts where the incidents complained of occurred outside the workplace.  In the end, GSC-BSA and the BSA determined to terminate Martinez on the basis of claims without substance.

38.     The gender of Martinez, male, was a motivating factor that led to the termination decision.

39.     But for the gender of Martinez, GSC-BSA and the BSA would have found that no sexual harassment occurred and that any disciplinary action was unjustified.

40.     GSC-BSA and the BSA have no legitimate, nondiscriminatory business reason for having terminated Martinez under the circumstances.

41.     Any business reason that GSC-BSA and the BSA may put forth for the termination of Martinez is but a pretext for unlawful gender discrimination under Title VII.

42.     Martinez is entitled to all remedies and relief available to him under Title VII, including, but not limited to, punitive damages for the intentional, wanton, willful, and grossly reckless acts of GSC-BSA and the BSA.

## COUNT II

## VIOLATIONS OF TITLE VII

## NATIONAL ORIGIN DISCRIMINATION

43.     Martinez hereby adopts and incorporates by reference paragraphs 1 through 42 as set forth above.

44.     Martinez is of Hispanic national origin.

45.     Beginning in or around the spring of 2011, Shelby, the Scout Executive, created a hostile work environment by making ethnic jokes and comments about Mexicans/Hispanics on a weekly basis.  The jokes and comments included ethnic slurs and epithets as well as demeaning and derogatory references to Hispanics.

46.     Shelby routinely also made fun of one of the Hispanic employee's speech accent in a mocking and derisive manner.

47.     Martinez complained to his supervisor, Lloyd Lyman, about the jokes and accent mocking being insensitive and inappropriate.  Nothing was ever done to stop this behavior.

48.     In addition to this discriminatory behavior, Shelby and Lyman treated Martinez in a discriminatory manner in the terms and conditions of Martinez's employment–including, but not limited to, the application of GSC-BSA policies, procedures, and practices to such varying terms of Martinez's employment as lunches, investigations, workplace relationships, lack of program support, equal opportunity, findings of sexual harassment, continued employment, and a hostile-free work environment.

49.     At all times material hereto, Martinez was qualified to be Program Director of the SJDP.

9

50.     At all times material hereto, Martinez was a member of a protected

class–Hispanics.

51.     Martinez suffered adverse employment actions in the form of a hostile work

environment, workplace harassment, humiliation as a Hispanic employee, and, finally,

termination.

52.     GSC-BSA treated Martinez differently and less favorably than similarly-situated

non-Hispanic employees.

53.     GSC-SBA has no legitimate, nondiscriminatory business reason for engaging in

the adverse employment actions described herein.

54.     Any alleged nondiscriminatory business reason put forth by GSC-SBA is but a

pretext for unlawful national origin discrimination.

55.     Martinez is entitled to all remedies and relief available to him under the

provisions of Title VII for the national origin discrimination complained of, including, but not

limited to, punitive damages for the intentional, wanton, willful, and grossly reckless conduct of

GSC-BSA.

## COUNT III

### BREACH OF AN IMPLIED CONTRACT OF EMPLOYMENT

56.     Martinez hereby adopts and incorporates by reference paragraphs 1 through 55 as

set forth above.

57.     The policies and procedures published, distributed, and enforced by GSC-BSA

and the BSA constitute an agreement, an implied contract of employment between the parties,

which by the course of conduct and usage the parties demonstrated an intent to be bound.

58.     GSC-BSA and the BSA, through the acts and failures to act of its management, repeatedly engaged in breaches of the policies and procedures in force at the time of the conduct Martinez complains of.

59.     By way of example, GSC-BSA and the BSA violated its policies and procedures in the process of investigating complaints made against Martinez, in deciding to issue disciplinary action, in allowing Martinez to be subjected to a hostile work environment.

60.     Martinez, based upon his training as a BSA employee and in accordance with the GSC-BSA and the BSA policies, procedures and practices, reasonably expected that GSC-BSA and the BSA would abide by its policies and procedures in determining the terms and conditions of Martinez's employment, including whether he would continue employed.

61.     Martinez reasonably believed that GSC-BSA and the BSA would faithfully interpret and apply BSA policies and procedures in the workplace–as it had done with other employees and in other events as witnessed to by Martinez.

62.     GSC-BSA and the BSA, however, failed to abide by and enforce their own policies and procedures by discriminating and retaliating against Martinez.  In doing so, GSC-BSA and the BSA breached the implied contract of employment established between the parties.

63.     Martinez is entitled to all remedies and relief available to him under New Mexico common law for the breaches of the implied contract of employment.

## DAMAGES

64.     Martinez hereby adopts and incorporates by reference paragraphs 1 through 63 as set forth above.

65.     Martinez seeks damages for lost past, present, and future wages and benefits.

66.     Martinez seeks damages for mental, emotional, and psychological distress.

67.     Martinez seeks damages for loss of enjoyment of life.

68.     Martinez seeks punitive damages for the intentional, willful, and wanton conduct of Defendants.

69.     Martinez seeks pre- and post-judgment interest.

70.     Martinez seeks payment of his attorney's fees and costs as allowable under rule, statute, and law.

**WHEREFORE** Martinez respectfully requests that this Court grant him judgment on the claims set forth herein, an award of damages on his claims, and such further relief the Court deems just and appropriate under the circumstances.

Respectfully submitted,

LAW OFFICES OF MICHAEL E. MOZES, P.C.

*/s/Michael E. Mozes*
MICHAEL E. MOZES
Attorney for Plaintiff Martinez
5732 Osuna N.E.
Albuquerque, NM 87109
(505) 880-1200
(505) 881-2444 (FAX)
Michael@mozeslawoffice.com