**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CARLOS E. MARTINEZ

      Plaintiff,

vs.                                     No. 13-cv-1049 RB/RHS

GREAT SOUTHWEST COUNCIL-
BOY SCOUTS OF AMERICA,
THE BOY SCOUTS OF AMERICA and
CHRIS SHELBY, in his individual capacity,

      Defendants.

**GREAT SOUTHWEST COUNCIL BOY SCOUTS OF AMERICA
MOTION FOR SUMMARY JUDGMENT**

## I.    <u>Summary Introduction.</u>

Plaintiff Carlos Martinez claims he was discriminated against by Great Southwest Council ("GSC") based on his gender (male) and his National Origin (Hispanic of Mexican descent). He further claims he had an implied employment contract and that GSC breached this implied contract. Mr. Martinez claims damages against GSC, including punitive damages for violation of Title VII and breach of contract.

Mr. Martinez's claims each fail as a matter of law. Mr. Martinez cannot establish that GSC traditionally discriminates against men. He cannot rebut there are legitimate business reasons supporting termination based on his admissions and thus cannot establish "but for" causation. Equally, the uncontroverted facts show Mr. Martinez never raised any protected class concerns about himself. Also, Mr. Martinez's circular basis for this claim do not show any material questions of fact or evidence of pretext or inference of a causal relation between his National Origin to his termination or his work environment. Further, the uncontroverted facts show there was no implied "employment contract" under the well-established standard, or breach

of any alleged contract.  Plaintiff opposes this Motion.

## II.     __Undisputed Material Facts ("UMF").__

1.      GSC hired Plaintiff on or about October 31, 2009.  *See* BSA000002-BSA000003, attached hereto as **Exhibit A**.

2.      In March 2012, GSC hired Hope Kitts, and assigned Plaintiff as her supervisor. *See* BSA000250, attached hereto as **Exhibit B**.

3.      Ms. Kitts resigned her employment with GSC on June 6, 2014.  ***See* Ex. B.**

4.      On or about July 8, 2012, Hope Kitts informed GSC that she had been sexually harassed by Plaintiff during her employment with GSC.  *See* BSA000080-BSA000081, attached hereto as **Exhibit C**.

5.      On or about July 10, 2012, Juliana Cabral and Liza Bley, two of Plaintiff's other female subordinates at GSC, informed GSC that they had been subjected to sexually inappropriate conduct by Plaintiff during their employment with GSC.  *See* BSA000083-BSA000085, attached hereto as **Exhibit D**.

6.      On or about July 11, 2012, GSC received a letter from Ms. Kitts' counsel, which recited that Plaintiff had also sexually assaulted Ms. Kitts during her employment with GSC. *See* BSA000142-BSA000143, attached hereto as **Exhibit E**.

7.      On July 12, 2012, GSC suspended Plaintiff with pay pending an investigation of the allegations against him by Ms. Kitts, Ms. Bley, and Ms. Cabral.  *See* BSA000149, attached hereto as **Exhibit F**.

8.      GSC requested Boy Scouts of America's (BSA) assistance in investigating these

allegations, and BSA assigned two of its employees, Ron Lunsford and Jim Gilbert, to conduct this investigation.  *See* Miller Dep. 22:9-12, June 18, 2014 attached hereto as **Exhibit G**; *and see* Shelby Dep. 69:6-13, June 19, 2014 attached hereto as **Exhibit H**.

9.     Mr. Lunsford and Mr. Gilbert from GSA were requested to provide an investigation.  *See* **Ex. G** 22:9-12; *see also* **Exhibit H** 69:6-13.

10.     On or about July 20, 2012, while Plaintiff was being interviewed for the second time in the course of this investigation, he admitted to having engaged in a dating relationship with Ms. Kitts.  *See* BSA000130-BSA000131, attached hereto as **Exhibit I**; Doc. 31 at ¶¶ 24-25.

11.     During the deposition questioning, Mr. Martinez admits his romantic relationship with Ms. Kitts.  *See* Martinez Dep., 74:24-25, 75:1-2, attached hereto as **Exhibit J**.

12.     GSC had written employment policies, as well as principle-driven practices and expectations in place for its supervisors, such as Mr. Martinez.  *See* Lunsford Dep. 102:23-104:12, June 18, 2014, attached hereto as **Exhibit K**.

13.     GSC policy expressly prohibits "romantic relationships between a direct supervisor and a subordinate."  *See* BSA000283, attached hereto as **Exhibit L**.

14.     This policy recites that it is in place because such relationships "can create a real or perceived conflict of interest," "can lead to ... an atmosphere of employee discomfort, perceived discrimination, potential harassment claims, and/or pressure," and can disrupt GSC's operations and cast them in a "negative light."  *See id.*

15.     This policy also recites that if it is violated, GSC may terminate the supervisor. *See id.*

16.     GSC policies also prohibit "immoral or indecent conduct," "behavior that is disruptive and interferes with the smooth functioning of a department," and "any other conduct that may be inconsistent with the best interests of [GSC] or its employees," and provide that such behavior is grounds for termination of employment.  *See* BSA000278-BSA000280, attached hereto as **Exhibit M**.

17.     All of the foregoing policies were in effect at the time Plaintiff was employed by GSC, and he acknowledged he received, read, and understood these policies, including that a violation may result in discipline, including discharge from employment.  *See* BSA000052, attached hereto as **Exhibit N**.

18.     Mr. Lunsford and Mr. Gilbert determined that Plaintiff had violated all of the foregoing policies.  *See* **Ex. K** 102:23-104:12; Gilbert Dep. 39:24-40:9, attached hereto as **Exhibit O**.

19.     Mr. Martinez's admissions were violations of written handbook policies, including the admitted violation of the prohibition of the romantic relationship with a subordinate.  In addition, Mr. Martinez's admissions violated the Policy's Code of Conduct, the Scout Open Law, the Scout Executive Code and the values and professionalism expected of his position.  *See* **Ex. K** 102:23-104:12;  **Ex. O** 39:24-40:9.

20.     Mr. Martinez's admissions included: "he made poor choices and put everyone in a bad situation";  speaking of his personal relationships with one complaining female employee; that he dated one complaining employee (Ms. Kitts) for two weeks and only stopped after he concluded "it wasn't a good idea", that "he did not use good judgment as a manager" that "he reviewed the employee handbook and discovered that one of the two employees in a relationship

may be terminated".  **Ex. I** .

21.     Mr. Lunsford and Mr. Gilbert recommended that GSC terminate Plaintiff's employment for these violations.  *See* **Ex. I**.

22.     Neither Mr. Shelby nor Mr. Lyman were directly involved in the termination decision.  *See* Lunsford Dep. 58:16-23, June 18, 2014 attached hereto as **Exhibit P**; and **Ex. G** 22:9-12.

23.     Mr. Shelby was on leave and had no involvement in the investigation that led to the termination.  See **Exhibit T** 58:16-23; and **Ex. I** 22:9-12.

24.     Mr. Lyman was not directly involved in the investigation.  Mr. Lyman requested that Mr. Gilbert and Mr. Lunsford, conduct an external investigation because they are not employed by GSC and thus avoid any inference of bias.  **Ex. G** 22:9-12.

25.     Mr. Lunsford and Mr. Gilbert made no findings whether Plaintiff had sexually harassed Ms. Kitts, Ms. Cabral, or Ms. Bley as they had alleged, and made no recommendations regarding these allegations.  *See* Gilbert Dep. 29:16-23, attached hereto as **Exhibit Q**.

26.     On July 27, 2012, GSC terminated Plaintiff's employment for "misconduct violating the policies" of GSC.  *See* BSA000027, attached hereto as **Exhibit R**.

27.     Mr. Martinez states only that he "feel(s)" and "believes"  that the underlying investigation was "unfair" and termination  would not have occurred if he was not a male. Martinez Dep. 101:17-104:15, June 16, 2014 attached hereto as **Exhibit S**.

28.     Mr. Martinez admits Mr. Shelby never directed any statements about Mr. Martinez as an Hispanic to Mr. Martinez.  *See* Martinez Dep.186:10-20, June 16, 2014 attached

hereto as **Exhibit T**.

29.     A careful reading of the reports by Mr. Martinez does not allege or make any reference to any discriminatory concerns about Mr. Shelby or Mr. Lyman *toward Mr. Martinez*. *See* 0018-0020, 0021-0027,attached hereto as **Exhibit U**.

30.     Mr. Martinez admits he has no information that Mr. Gilbert or Mr. Lunsford had any animus toward Martinez as an Hispanic of Mexican descent or to Hispanics of Mexican descent generally. *See* Martinez Dep. 188:9-189:3, June 16, 2014 attached hereto as **Exhibit V**.

31.     Mr. Martinez only testifies in response to the inquiry asking him to provide specifically and in detail the complete factual basis that supports his allegations of treatment in a discriminatory manner in the terms and conditions of employment by responding  "I *feel* that if I were not a Hispanic male I would not have been terminated from GSWC BSA and would have received better overall treatment in all aspects of my job" (emphasis added).  *See* Plaintiff's Answers and Responses to Defendants' First Set of Interrogatories and First Requests for Production, Answer to Interrogatory 23, attached hereto as **Exhibit W**.

32.     GSC's policies and procedures stated in its Professional Staff Employee Handbook ("Handbook") unambiguously and expressly provide that "it is not intended to create any contractual rights in favor of you or the Great Southwest Council" and that GSC reserves the unilateral right to change any handbook provisions.  BSA000270, attached hereto as **Exhibit X**.

33.     The Handbook is provided to GSC employees "so that they may be informed of its current employment policies; it is not a contract or other legal guarantee that the Great Southwest Council will continue any practice or policy described in it" and that no one other than the GSC Scout Executive may limit GSC's right to terminate at any time.  BSA000277,

attached hereto as **Exhibit Y**.

34.     Martinez signed an acknowledgment of receipt and understanding where he expressly stated that he understood that the Great Southwest Council's Professional Employee Handbook  "is not intended to create any contractual rights in favor of myself or the Great Southwest Council."  BSA000052, attached hereto as **Exhibit Z**.

35.     Martinez also received and signed a letter upon accepting GSC employment advising his employment is "at will".  **Ex. A**.

36.     GSC's Professional Staff Employee Manual provides that it contains personnel policies and procedures, and is only provided for the "guidance of its employees;" that policies may be changed without notice; that none of the policies should be relied on as a contractual obligation of GSC to its employees; and that the handbook does not limit the right of GSC to terminate the employment relationship at any time.  *See* BSA000263, attached hereto as **Exhibit AA.**

37.     Mr. Martinez, in response to the inquiry to "specifically and in detail" identify each instance he "was treated differently and less favorably than similarly situated non-Hispanic employees", identified only that two non-Hispanic males were "accused of sexual harassment and neither were terminated".  *See* Answer to  Defendant's Interrogatory 13 attached as **Exhibit BB**.

38.     Mr. Martinez, in response to inquiry to identify facts supporting his allegation that gender was a motivating factor that led to his termination, stated, "I believe that if Mr. de Valle was a female, Mr. Shelby would not have made fun of his accent."  See Answer to Defendant's Interrogatory 19, attached as **Exhibit CC**.

III.    **Argument**.

A.      **No Reverse Gender Discrimination**

Reverse gender discrimination is only a basis for violation of Title VII if the plaintiff can demonstrate that the employer is one of those unusual employers that discriminate against males or where the challenged employment action would not have occurred "but for" the plaintiff's male gender.  Neither issue is demonstrated by Mr. Martinez.

1.      No Inference of Discrimination Against Males.

Mr. Martinez states no factual evidence or even a colorable allegation that GSC-BSA "is one of those unusual employers who discriminates against the majority". *Clark v. Cache Valley Elec. Co.*, 2014 U.S. App. Lexis 14169, at *8 (10th Cir. Jul. 25, 2014) (unpublished) (quoting *Argo v. BC/CS of Kan., Inc,* 452 F.3d 1193, 1201 (10th Cir. 2006)). To allege so would be absurd on its face.

2.      No Reasonable Inference That "But For The Plaintiff's Status [As a Male] The Challenged Decision Would Not Have Occurred." *See Id.*

As in *Clark* and *Argo,* Mr. Martinez presents only conclusory allegations or unsupported speculation as alleged evidence of but for causation.  *Id.*  In essence he alleges that "I believe" had Luis del Valle, an Hispanic Male been "a female, Mr. Shelby would not have made fun of his accent".  *See* Answer to Defendant's Interrogatory 18 attached as **Exhibit CC**.  He cites to the bare allegations in his Complaint that he was terminated because GSC chose to believe three female employees who made allegations of improper behavior against him.  As shown below, Mr. Martinez was terminated based

on his admissions to violations of multiple GSC policies, standards and expectations, and not on any such allegations.   In deposition testimony, Mr. Martinez only reiterates he "feel(s)" and "believes"  that the underlying investigation was "unfair" and termination would not have occurred if he was not a male. (UMF **27**).

This is the same type of non-evidence the Tenth Circuit specifically states does not articulate a material factual issue supporting inference of even a *prima facie* case of reverse discrimination. *See e.g., Reynolds v. School Dist. 1,* 69 F.3d 1523 (1995).  The Court of Appeals notes in *Clark* that bare complaint allegations and the unsupported statements of a Plaintiff  make "no showing...of gender bias",  is "insufficient to establish a case of gender discrimination" and "the district court therefore properly grated summary judgment on this claim."   *Clark,* 2014 U.S. App. Lexis 14169, at *11. Similarly, in *Argo*, The Court of Appeals upheld the District Court finding that self serving testimony about the absence of similar treatment of any female employee did not support a claim of reverse sex discrimination, that the Plaintiff "failed to establish a prima facie case" and it affirmed the grant of summary judgment.  *Argo*, 452 F.3d at 1204.

**B.**      **No National Origin Discrimination**

Mr. Martinez's basis for alleged National Origin discrimination against GSC is *de minimus* and does not meet the threshold to create a genuine issue of material fact.  It is uncontroverted Mr. Martinez has identified no direct evidence of National Origin discrimination against him.  The only indirect evidence set forth by Mr. Martinez is tangential, immaterial or unpersuasive.   In fact Mr. Martinez tries hardest to infer discriminatory action against him based on statements Mr. Shelby made about *another*

Hispanic employee's accent, Luis del Valle.[1]   Beyond the bald allegation that such statements were admittedly made, and that he reported them to Mr. Lyman  as making him "uncomfortable", there is no evidence of any connection to his termination.

Mr. Martinez admits Mr. Shelby never directed any statements about Mr. Martinez as an Hispanic to Mr. Martinez. (UMF 28).  Even if the incidences of conduct alleged here had been  directed at the Martinez, they do not create a question of fact involving National Origin discrimination.  In *Gamez v. County Cottage Care & Rehab.*, the plaintiff, a Mexican-born resident alien, claimed national origin discrimination stemming from her supervisor's comment that she would "call immigration to come get [plaintiff]." 377 F. Supp.2d 1103, 1111 (D.N.M. 2005).  Plaintiff further alleged that the supervisor's derogatory comments regarding plaintiff's ability to speak English were discriminatory.  *Id*. at 1111-12.  The New Mexico Federal District Court held that the supervisor's comments were insufficient to establish national origin discrimination and dismissed plaintiff's claim.  *Id*. at 1126; *see also Lochard v. Provena St. Joseph Med. Ctr.*, 367 F. Supp. 2d 1214, 1224 (N.D. Ill. 2005); *Hong v. Children's Mem'l Hosp.,* 993 F.2d 1257, 1266 (7th Cir.1993) ("Evidence of a supervisor's occasional or sporadic use of a slur directed at an employee's race, ethnicity, or national origin is generally not enough to support a claim under Title VII."); *O'Connor v. Viacom, Inc.,* No. 93 CIV. 2399, 1996 WL 194299, at *5 (S.D.N.Y. April 23, 1996) (remarks made by a supervisor were insufficient to establish national origin discrimination); *Sergilus v. Covenant House Under 21,* No. 96 CIV. 6210, 1999 WL 717274, at *2 (S.D.N.Y. Sept. 15, 1999) (racial

---

[1] Mr. Shelby hired Mr. Martinez and GSC is entitled to the presumption it would not discriminate and terminate or otherwise discriminate against Mr. Martinez as a protected class member.  *See Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006); *see also Lopex-Fisher v. Abbott Laboratories*, 441 F. Appx. 602 (10th Cir. 2011).

epithet made by a supervisor who aided in the plaintiff's termination was not actionable).

Mr. Martinez admits he has no information that Mr. Gilbert or Mr. Lunsford had any animus toward Martinez as an Hispanic of Mexican descent or to Hispanics of Mexican descent generally.  (UMF 30).  Mr. Martinez offers no testimony from Mr. del Valle or any other Hispanic supporting either the inference of a hostile environment or a causal connection to his termination.    Initially, as noted, neither Mr. Shelby nor Mr. Lyman were directly involved in the termination decision. (UMF 22, 23, 24).  Further, although Mr. Martinez made several written statements of concern, he never alleged any concern about Mr. Shelby, Mr. Lyman or GSC treating him differently based on National Origin issues.  (UMF 29).   He further alleges and testifies at length *inter alia* about Mr. Shelby and Mr. Lyman calling him back from a luncheon with his two sons, makes vague allegations of lack of support for his particular scouting program.   He provides no evidence that these have any connection to his National Origin.

Mr. Martinez, in response to the inquiry to "specifically and in detail" identify each instance he "was treated differently and less favorably than similarly situated non-Hispanic employees", identified only that two non-Hispanic males were "accused of sexual harassment and neither were terminated".   Since, however, it is uncontroverted that Mr. Martinez was terminated for admitted violations of other GSC policies, practices and expectations, this is completely immaterial.  (UMF 37).  Beyond this, Mr. Martinez only testifies in response to provide specifically and in detail the complete factual basis ... that supports his allegations of treatment in a discriminatory manner in the terms and conditions of employment by responding  "I *feel* that if I were not a Hispanic male I would not have been terminated from GSC (sp) and would have received better overall

treatment in all aspects of my job" (emphasis added).  (UMF 31).

    1.    <u>No</u> <u>Nexus</u> <u>With</u> <u>Termination</u>.

In sum, the uncontroverted facts do not demonstrate any reasonable direct or indirect evidence that National Origin led to his termination.  Defendants, including GSC, should be dismissed because the true uncontroverted facts demonstrate there is no credible evidence of a causal connection between Mr. Martinez's National Origin and the termination.   This is a classic case calling for summary judgment  as Mr. Martinez does not give credible material evidence such that "the factfinder must be able to conclude, based on a preponderance of the evidence, that *discrimination was a determinative factor* in the employer's actions—simply disbelieving the employer is insufficient."  *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (emphasis by court) (internal quotation marks omitted) (affirming summary judgment in factually analogous race discrimination case).

As the Tenth Circuit points out, no matter what theory of Title VII is alleged, "[a]t some point, however, the plaintiff must persuade the factfinder that the evidence... was a "motivating factor" (in which case the evidence is analyzed within the mixed motive framework) or that the employer's reason is unworthy of belief (in which case it is analyzed within the pretext framework) (summary judgment for employer in retaliation claim confirmed).  *See also*, *Fye v. Okla Corp. Comm'n*, 516 F.3d 1217 (10th Cir. 2014).  In this case there is insufficient nexus as a matter of law and summary judgment is proper.  See, e.g. *Id*; *Negrette v. Maloof Distrib, L.L.C*., 2007 U.S. Dist. LEXIS 97769 (D.N.M., Nov 29, 2007) (citing *Shorter v. ICG Holings, Inc*., 188 F.3d 1204, 1209-10

(10th Cir. 1999), overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90,98-102 (2003) (recognizing that Plaintiff must show some nexus between racial derogatory statements and employer's decision to terminate).

   2.   No Hostile Environment.

   Neither does his litany of allegations and proposed evidence demonstrate a question of material fact as to a hostile work environment.[2]   Viewing the facts in the most favorable light to Mr. Martinez do not give rise to a question of fact that:  "(1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was [based in National Origin] or stemmed from [National Origin] animus."  *Trujillo v. University of Colorado Health Sciences Ctr.*, 157 F.3d 1211, 1214 (10th Cir. 1998) (quoting *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)).  The mere utterance of statements which "engenders offensive feelings in an employee would not affect the conditions of employment to a sufficiently significant degree to violate Title VII."  *Vinson*, 477 U.S. at 67 (internal quotations and citations omitted).  Rather, the plaintiff must show "more than a few isolated incidents of racial enmity."  *Bolden*, 43 F.3d at 551 (internal quotations and citations omitted).  "Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments."  *Id.* at 551; *see also Hicks v. Gates Rubber  Co.*, 833 F.2d 1406, 1412-13 (10th Cir. 1987).

   Mr. Martinez does not present a factual issue that any alleged harassment is such that it "would not occur but for the [National Origin] of the employee."  *Hicks*, 833 F.2d at 1415 (*quoting McKinney v. Dole*, 965 F.2d 1129, 1138-39 (D.C. Cir. 1985)).  "If the

---

[2] Mr. Martinez does not allege a specific Count of hostile work environment.  To the extent one may be inferred from the pleadings, it should be dismissed as a matter of law.

nature of an employee's environment, however unpleasant, is not due to [his National Origin], [he] has not been the victim of [National Origin] discrimination as a result of that environment." *Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533, 538 (10th Cir. 1994). "General harassment if not racial or sexual is not actionable." *Bolden*, 43 F.3d at 551.

Mr. Martinez does not meet the threshold requirement to state a material factual issue when reviewed under the appropriate standard measuring 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Trujillo*, 157 F.3d at 1214 (*quoting Harris*, 510 U.S. at 23)). Here, there are no allegations of any National Origin slurs or comments directed at Mr. Martinez or effecting his work sufficiently as required to show a hostile environment based in National Origin. Plaintiff's grievances include none of the racial comments or racial ridicule that are "hallmarks of hostile work environment claims." *Id.* Moreover, Plaintiff's allegations simply portray "a work environment that exhibits the monitoring and job stress typical of life in the real world. Normal job stress does not constitute a hostile or abusive work environment." *Id.* Finally, federal law will not impose liability every time a supervisor "implements a policy with which an employee disagrees or that monitors her employees' conduct." *Id.* Plaintiff has failed to allege evidence that accent comments or any behavior stemmed from racial animus toward him. *Id.* Nothing in Plaintiff's Complaint supports that his working conditions were inflicted upon him because of racial animus." *Id.* at 1214-15. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim for National Origin based hostile work environment.

### C.        Legitimate Reason for Termination

The uncontroverted material facts demonstrate a legitimate non-discriminatory basis for the termination.  See *Antonio v. Sygma Network, Inc*. 458 F.3d 1177,1181 (10th Cir. 2006) (applying McDonald Douglas burden-shifting analysis to termination case based in Title VII).  It is uncontroverted that GSC had written employment policies, as well as principle-driven practices and expectations in place for its supervisors, such as Mr. Martinez. (UMF 12).  It is uncontroverted these policies and expectations included that Mr. Martinez refrain from a romantic relationship with a subordinate; follow the Policies, General Rules & Regulations, including to refrain from immoral and indecent conduct; avoid disruptive, interfering behavior and adhere to established rules and these policies, follow the professionalism and code values expected of a professional Scout manager, including the Scout Oath and Law; and refrain from "any other conduct inconsistent with the best interests of the [GSC] or its employees" (UMF 16).  Mr. Martinez admits these policies were in place and relies on the same set of policies and expectations for his contract claims. (Am. Compl., Count III) (UMF 17).

It is further uncontroverted that the violation of these policies was determined based on the direct admissions of Mr. Martinez.  (UMF's 19, 20).  For example, Mr. Lunsford states in his deposition that Mr. Martinez's admissions were violations of written handbook policies, including the admitted violation of the prohibition of the romantic relationship with a subordinate.  In addition, Mr. Martinez's admissions violated the Policy's Code of Conduct, the Scout Open Law, the Scout Executive Code and the values and professionalism expected of his position.   (UMF 19).  Mr. Martinez's admissions included: "he made poor choices and put everyone in a bad situation";

speaking of his personal relationships with one complaining female employee; that he dated one complaining employee (Ms. Kitts) for two weeks and only stopped after he concluded "it wasn't a good idea", that "he did not use good judgment as a manager" that "he reviewed the employee handbook and discovered that one of the two employees in a relationship may be terminated". (UMF 20).

Thus, Mr. Martinez's contentions that he was discriminated against based on either gender, National Origin or otherwise based upon any statements by females or anyone else in the investigation, or because of any complaints or concerns he may have raised is immaterial.  He was terminated for admitted behavior in violation of policies and Scout principles.  Purported discrimination causally unconnected to an adverse employment action does not give rise to a *prima facie* case, or alternatively meets the burden shift to GSC that the termination here is based on legitimate non-discriminatory grounds.  See, e.g., *Doebele v Sprint/United Mgmt. Co*., 342 F.3d 1117,1135 (10th Cir. 2003) (Employer's burden is one of production, not persuasion and does not involve credibility assessment).

## D.      No Pretext

Mr. Martinez presents no evidence of a material question of fact to rebut GSC's legitimate reason for termination.  He does not deny the admissions surrounding the romantic relationship made during the course of the investigation. (UMF 11).

Allegations that Mr. Shelby and Mr. Lyman, his direct supervisors, harbored discriminatory animus toward him are immaterial.  It is uncontroverted that Mr. Shelby was on leave and had no involvement in the investigation that led to the termination

(UMF 23).  Similarly, Mr. Lyman was not involved.  Mr. Lyman requested that Mr. Gilbert and Mr. Lunsford, from National Boy Scouts of America, conduct an external investigation because they are not employed by GSC and thus avoid any inference of bias. (UMF 24).  Neither Mr. Shelby nor Mr. Lyman were involved in the actual termination decision. (UMF 23, 24).

Allegations that infer Mr. Martinez raised concerns about his working relationship with Mr. Shelby or Mr. Lyman and that he reported concerns over lack of training on hostile work environment by female employees are also immaterial.  (Amended Complaint, paragraphs 14-18. 20-22).  Besides bare allegation and speculation, Mr. Martinez has failed to provide any evidence that the relationship issues with Mr. Shelby or Mr. Lyman influenced the termination as discussed above.  Further, a careful reading of  the reports of any concerns referred to by Mr. Martinez do not allege or make any reference to any discriminatory concerns about Mr. Shelby or Mr. Lyman *toward Mr. Martinez* (UMF 29).

The inference by Mr. Martinez that pretext here may be found in his allegation that GSC would rather face one suit by a male than a suit by female employees is illusory and immaterial.  First, despite review of the significant discovery in this matter, Mr. Martinez neither elicited nor offered any testimony on this issue.  In addition, there is no legal or equitable premise identified by Mr. Martinez  that his suit provides a defense or buffer to GSC from a potential suit by a female employee.  This is unlike the situation in *Reynolds v. School Dist. No. 1*, 69 F.3D 1523 (10th Cir. 1995) where such a background circumstance was material (albeit to make out a *prima facie* case of reverse discrimination) as plaintiff was the only white employee in an otherwise all-Hispanic

department.  Here, Mr. Martinez is male and so are his former supervisors, Mr. Shelby and Mr. Lyman as well as the two investigators, Mr. Lunsford and Mr. Gilbert and thus there is no relevant circumstance affecting any potential claim by a female.  This theory is, at best, speculation and not a material issue.

As discussed above, Mr. Martinez states that Mr. Shelby imitated or otherwise made fun of another Hispanic employee's accent.  To the extent he claims that is evidence of pretext based on National Origin, this issue also is immaterial.  As stated, it is uncontroverted that Mr. Shelby had no involvement in the investigation.  (UMF 23) .  Further, he was not involved in the termination decision (UMF 22).  Mr. Martinez presents no testimony from Mr. del Valle or any other Hispanic in support of his claim.  There simply is no evidence that links Mr. Shelby's interaction with one other Hispanic employee to the Martinez termination, or that there is any reasonable inference of pretext.

Under clear Tenth Circuit guidelines, Mr. Martinez, as a matter of law, has no material evidence of pretext.   "[T]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs."  *Young v. Dillon Cos.*, 468 F.3d at 1250 (10th Cir. 2006).  In sum, the court's role "is to prevent intentional discriminatory [discharges], not to act as a super personnel department, second guessing employers' honestly held (even if erroneous) business judgments."  *Id.* (internal quotation marks omitted).  Importantly, a plaintiff's own subjective beliefs do not create a triable issue of fact regarding pretext. *See Arzate v. City of Topeka*, 884 F. Supp. 1494, 1501 (D. Kan. 1995) ("[I]t is well settled that the plaintiff's own 'belief' or 'feeling' that [she] was a victim of disparate treatment is insufficient, standing alone, to preclude judgment as a

matter of law.); *see also Falkner v. Super Valu Stores, Inc.,* 3 F.3d 1419, 1426 n.4 (10th Cir. 1993) ("A plaintiff's mere belief that defendant's explanation is pretextual or that [she] was treated unfairly, in and of itself, is insufficient as a matter of law to prove age discrimination.")

Here Mr. Martinez does not establish a question as to whether the reason proffered by the employer is pretextual.  *See, e.g., Miller*, 420 F.3d at 1120; *accord Doebele*, 342 F.3d at 1135.  Pretext evidence must be more than Mr. Martinez's own subjective beliefs, conjecture, or "generic and conclusory testimony."  *See, e.g., Jones v. Denver Post Corp.*, 203 F.3d 748, 754, 756 (10th Cir. 2000); *Morgan v. Hilti*, 108 F.3d 1319, 1323 (10th Cir. 1997).  Instead, this evidence must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason for its action that a reasonable fact finder could rationally find them unworthy of credence."  *Pastran v. Kmart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000).  Mr. Martinez does not provide such evidence.

Further, "[a] challenge of pretext requires [the Court] to look at the facts as they appear to the person making the decision" regarding a purportedly adverse employment action.  *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1231 (10th Cir. 2000). The Court "may not second guess the business judgment of the employer[.]"  *Selenke v. Medical Imaging of Colo.,* 248 F.3d 1249, 1261 (10th Cir. 2001); *accord Watts v. City of Norman,* 270 F.3d 1288, 1296 (10th Cir. 2001).  Mr. Martinez asks this Court to do precisely what *Kendrick* and *Selenke* do not permit.  His Amended Complaint and alleged evidence requests this Court ignore the unconverted legitimate basis for his termination and accept the very type of indirect inferential evidence which will not, as a matter of

law, rebut GSC's basis for summary judgment.[3]

**E.     No Breach of Contract.**

GSC is entitled to summary judgment in its favor on plaintiff's breach of implied contract of employment claim.  There was no implied employment contract between GSC and Plaintiff.  Alternatively, even assuming an implied employment contract, GSC did not breach such a contract.  Mr. Martinez did breach.

1.     <u>Disclaimers</u> and <u>At</u> <u>Will</u> <u>Employment</u>.

GSC's Employment Handbook and Acknowledgment of Receipt and Understanding Form signed by Mr. Martinez expressly provides that Plaintiff's employment was at-will and did not create a contract between GSC and Plaintiff. Martinez also received and signed a letter upon accepting GSC employment advising his employment is "at will".  (UMF 35).  GSC's policies and procedures stated in its Professional Staff Employee Handbook ("Handbook") acknowledgment of receipt, signed by Mr. Martinez unambiguously, expressly provide that "it is not intended to create any contractual rights in favor of you or the Great Southwest Council."  (UMF 34). The signed acknowledgement continues, "I understand that the Great Southwest Council reserves the right to change any of the provisions at any time and in any manner it believes to be in the best interest of the Boy Scouts of America."

The Handbook is provided to GSC employees "so that they may be informed of its current employment policies; it is not a contract or other legal guarantee that the Great Southwest Council will continue any practice or policy described in it."  (UMF 33)  The

---

[3] While directed at Mr. Martinez's termination to the extent Mr. Martinez may be alleging hostile work environment, this same reasoning applies, and that claim must also be discussed as a matter of law.

Handbook expressly states that employment with GSC is at-will employment and the employment relationship may be terminated at any time by either the employee or employer, with or without cause. *Id.* It reiterates, "it is not a contract or other legal guarantee that [GSC] will continue any policy or practice in it" and that no one other than the Scout Executive is authorized to limit GSC's "right to terminate employment and at any time with or without reason or advance notice." *Id.*

The Handbook introductory page reinforces the clear non-contractual nature of the policies, stating:

> This handbook contains the present personnel policies and practices of the Great Southwest Council and is provided for the guidance of its employees. These policies and practices may be changed without notice. None of the policies or practices described in this handbook constitutes or should be relied on as a contractual obligation of the Great Southwest Council to its employees or to any other persons. In addition, nothing in this handbook guarantees any specific term of employment or otherwise limits the right of the Great Southwest Council or its employees to terminate their relationship at any time with or without reason.

Personnel handbooks that contain language reserving the right of termination and specifically disclaiming that they constitute a contract of employment do not create an implied contract under applicable New Mexico law. *Harbarger v. Frank Paxton Co*., 1993-NMSC-029, ¶ 14, 115 N.M. 665, 857 P.2d 776; *Paca v. K-Mart Corp.*, 1989-NMSC-034, ¶ 9, 108 N.M. 479, 775 P.2d 245. The Handbook does not contain a specific or explicit promise that employment is terminable only for good cause. To the contrary, the Handbook could not more explicitly state that employment is at-will and employees can be terminated at any time for any reason. The at-will relationship may be modified only by specific and clear expressions that restrict the employer's ability to terminate at

will and there is no allegation or evidence that Mr. Shelby (Scout Executive) did so.   He did not.  *Hartbarger*,1993-NMSC-029,  ¶ 14.

>    2.   Totality Supports No Contract.

Plaintiff's attempt to create a question of implied contract by allegation that Martinez reasonably expected GSC would abide by its policies and procedures in determining the terms and conditions of Martinez's employment, including whether he would continue being employed, are immaterial to his contract claim.  The provisions on which Plaintiff relies do not expressly modify GSC's ability to terminate Plaintiff.  (UMF 32, 33, 34).  In addition, as a matter of law this expectation is not "sufficiently explicit to create a reasonable expectation of an implied contract."  *See Trujillo v. Northern Rio Arriba Elec. Co-Op, Inc.,* 2002-NMSC-004, ¶ 22, 131 N.M. 607, 41 P.3d 333.  Such expectation cannot change at-will employment as it does not satisfy the required threshold of objectivity.  *Kiedrowski v. Citizens Bank,* 1995-NMCA-011, ¶ 9, 119 N.M. 572, 893 P.2d at 471 (citing *Kestenbaum v. Pennzoil Co.,* 108 N.M. 20, 23, 766 P.2d 280, 283 (1988)).  Instead, this is, at best, a unilateral "impression".  *Garrity v. Overland Sheepskin Co. of Taos,* 1996-NMSC-32, ¶ 10, 121 N.M. 710, 917 P.2d 1382.

Such a unilateral expectation is insufficient to imply a contract.  *See Deweese v. Bowes,* 2003 WL 2300174 (D. Kan. 2003).  It is well established New Mexico law that a party's unilateral expectation, here expressed as simply that GSC would follow its own policies, is not a contractual entitlement that would support Mr. Martinez's claim.  *See Graff v. Glennan,* 106 N.M. 668, 748 P.2d 511 (1988); *Pedrazza v. Sid Fleming Const. Inc.,* 94 N.M. 59, 607 P.2d 597 (1980).  Here, Plaintiff has not and cannot identify any statement or conduct from which a reasonable factfinder could infer that GSC intended to

enter into a binding contract.  There is an absence of true contractual elements including an offer, acceptance, and mutual assent.  *See Garda v. Middle Rio Grande Cons. Dist.,* 121 N.M. 728, 918 P.2d 7, 10 (1996) (quoting Harbarger).  In fact, if such were, then every employment policy or handbook would be a contract.  Such is not the case, particularly here, where the GSC policies provide only "guidance of its employees." (UMF 36).

    3.    <u>GSC Did Not Breach the Alleged Implied Employment Contract</u>.

Assuming, *arguendo,* that an employment contract existed, there is no breach because GSC followed the procedures and policies stated in the Handbook with regard to Plaintiff's termination.   The Handbook expressly prohibits the acts Mr. Martinez admitted, including "romantic relationships between a direct supervisor and a subordinate" and his admitted behavior as described above.  (UMF 13).  This policy states that if such relationship develops, the supervisor may be terminated.   (UMF 15). Plaintiff has acknowledged that he had such a relationship with his subordinate, Hope Kitts.  (UMF 11).  GSC reasonably concluded other policy and employer expectations were violated.  Such violations also may result in termination.  (UMF 15).  Thus, Plaintiff was subject to immediate termination and GSC followed proper procedure in accord with the Handbook.  Mr. Martinez's attempt to entangle this straightforward issue presents only non-material issues.

    4.    <u>No Punitives</u>.

This case is one where Plaintiff does not allege, or show a factual question about the type of narrow behavior under the standard that permits consideration of punitive damages in a discrimination claim.  The totality of facts do not demonstrate the required

willful intentional malice or extreme recklessness and gross disregard for Mr. Martinez's protected class rights.  *See e.g. Gundes, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.* (295 F.3d 1065) (10th Cir. 2002) (punitive award under § 1981 for race discrimination vacated and remanded for entry of summary judgment).  Mr. Martinez's alleged facts, even if true, are devoid of the type of behavior found by the Tenth Circuit to support punitive damages awards.  For example, even where a new landlord purposely mislead and refused to negotiate a lease with an African immigrant, the Court of Appeals held "We conclude the standard for punitive damages cannot be satisfied by a showing of intentional discrimination alone."  *Id.* 295 F.3d at 1077.  Similarly, in a Title VII race discrimination case, where plaintiff alleged protected class personal animosity, as Mr. Martinez claims, the Court of Appeals noted the applicable rigorous standard under federal law and affirmed the set aside of a jury award of punitive damages.  *Jackson v Pod Mort. Co.,* 868 F.2d 1178 (10th Cir. 1989).  *See also Turic v. Holland Hospitality, Inc.,* 85 F.3d 1211, 126 (6th Cir. 1996) (no punitives even though employee fired pregnant woman and where employer's actions were intentionally duplicitous and disclosed lack of empathy, they did not rise to the federal standard level).

The evidence offered here is indirect, demonstrates care by GSC to engage in a fair review of allegations of improper behavior by a non-biased duo of investigators outside of GSC.  Even reviewing Mr. Martinez's criticism of the investigation, his termination and any issues with Mr. Shelby and Mr. Lyman, there is no evidence alleged that approaches the floor required under the Federal Standard.  The prayer for punitive damages should be dismissed as a matter of law.

**IV.** **Conclusion and Prayer.**

For all the reasons stated herein, Defendant GSC and all Defendants should be dismissed from all claims and damages and the Court should award attorney fees and costs of defense and any further relief deemed just and proper to Defendants.

Respectfully submitted,

KELEHER & McLEOD, P.A.


By:   */s/ S. Charles Archuleta*
      S. Charles Archuleta
      Benjamín F. Feuchter
      P.O. Box AA
      Albuquerque, New Mexico  87103
      Telephone:  (505) 346-4646
      Facsimile:  (505) 346-1370
      *Attorneys for Defendants*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 15, 2014, I filed the foregoing pleading electronically through the CM/ECF System, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Michael E. Mozes, michael@mozeslawoffice.com


    */s/ S. Charles Archuleta*
S. Charles Archuleta


4846-1210-3967, v.  2